UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MAURICIO MARTINEZ, DMD, P.A.,

    Plaintiff,

v.                                  CASE NO. 2:20-cv-00401-FtM-66NPM

ALLIED INSURANCE COMPANY OF
AMERICA,

    Defendant.
_____/

## ORDER

In this two-count insurance coverage action, Mauricio Martinez, DMD, P.A. ("Martinez"), sues his insurance carrier, Allied Insurance Company of America ("Allied"), for damages Martinez claims were "caused by or result[ing] from a Covered Cause of Loss." (Docs. 4, 4-1.) The overarching cause of the alleged loss, Martinez maintains, is the impact of the COVID-19 virus and the Governor of Florida's COVID-19 emergency declaration, which limited dental services. Specifically, Martinez claims that he: (1) incurred costs to decontaminate his dental office of the virus, and (2) lost business income because of the Governor's limitation of dental services to only emergency procedures during the COVID-19 pandemic. (Doc. 4 at 2–3.)

Allied moves to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 6.) Because the insurance policy expressly excludes coverage from damages caused by a virus, Allied's motion to dismiss is **GRANTED**.

1

STATEMENT OF FACTS

Accepting the allegations in both the complaint and the attached exhibits as true for the purpose of adjudicating a Rule 12(b)(6) motion to dismiss,[1] the facts are as follows: Allied issued a commercial insurance policy to cover Martinez's dental practice for the period September 28, 2019, to September 28, 2020. (Doc. 4-1 at 2.) In early March 2020, the Governor of Florida issued an executive order declaring a state of emergency in Florida due to the COVID-19 pandemic. (Doc. 4 at 4.) In mid-March, President Donald J. Trump, the Centers for Disease Control and Prevention, and Medicaid recommended that providers limit all "non-essential" dental procedures. (*Id.*) The executive order permitted only emergency dental procedures during its operative period. (*Id.* at 5.)

Martinez subsequently filed a claim with Allied for monetary losses that his business sustained because of the COVID-19 pandemic. (*Id.*) On April 1, 2020, Allied denied that claim. (Doc. 6-1 at 190.) Martinez alleges that COVID-19 caused damage to the dental office, namely the cost of decontaminating his office and of closure, physical damage, and loss of business income. (Doc. 4 at 4.)

---

[1] For the purpose of adjudicating a Rule 12(b)(6) motion, well-pleaded allegations are presumed true, and the pleadings are viewed in the light most favorable to the plaintiff. *Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1066 (11th Cir. 2007). Federal Rule of Civil Procedure 8(a)(2) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff must provide facts on which he can state his claim, and a conclusory or "formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

DISCUSSION

The insurance policy provides coverage "for direct physical loss or damage to Covered Property at the [plaintiff's] premises" that is "caused by or result[s] from any Covered Cause of Loss." (Doc. 4-1 at 2.) Allied asserts that there was no direct physical loss or damage to covered property at the dental practice's premises "as a result of the appointment cancellations or the closure of [the plaintiff's] dental practice."[2] (Doc. 6-1 at 190.)

Coverage for loss of business income is provided as "additional coverage" under the insurance policy. (Doc. 4-1 at 4.) This covers the "actual loss" of "business income" sustained during the necessary suspension of the policyholder's "operations" during "the period of restoration." (*Id.* at 7.) Suspension must be caused by direct physical loss of or damage to property at the covered premises. (*Id.*) The loss or damage "must be caused by" or "result[] from" a "Covered Cause of Loss. (*Id.*)

The policy's provision governing loss of business income due to the act of a "civil authority" states, in relevant part:

> When a Covered Cause of Loss causes damage to property other than property at the described premises, [the insurer] will pay for the actual loss of Business income [] sustain[ed] and necessary Extra Expense caused by action

---

[2] Responding to the motion to dismiss, Martinez's response offers no opposition to the arguments asserted by Allied. (Doc. 10.) Martinez's argument is encapsulated simply in a summary at the conclusion: "Here the Defendant hasn't established beyond a doubt that a breach of contract nor declaratory action should be litigated. The Plaintiff asserts that these matters are well plead and therefore the Defendant's Motion should be denied." (Doc. 10 at 4.) First, it is not any defendant's duty to establish "beyond a doubt" that an action "should be litigated." Second, an insurer's duty to defend its insured against legal action depends solely on the facts alleged in the pleadings and on the legal claims alleged against the insurer.

3

> of civil authority that prohibits access to the [covered] premises, provided that . . . (1) Access to the area immediately surrounding the damaged property is prohibited by civil authority as a result of the damage, and the described premises are within that area but are not more than one mile from the damaged property; and (2) the action of civil authority is taken in response to dangerous physical conditions resulting from the damage or continuation of the Covered Cause of Loss that caused the damage, or the action is taken to enable a civil authority to have unimpeded access to the damaged property.

(Doc. 4-1 at 8.) Allied asserts that there has been: (1) no action of civil authority prohibiting access to Martinez's dental practice premises, and (2) no damage to property within one mile of the premises from a covered cause of loss. (Doc. 6 at 8–10.) Most importantly, Allied also argues that the policy contains an exclusion for loss or damage caused "directly or indirectly," by "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease." (*Id.*; Doc. 4-1 at 21, 23.)

### Count I—Breach of Contract

"Contract interpretation is generally a question of law." *Lawyers Title Ins. Corp. v. JDC (Am.) Corp.*, 52 F.3d 1575, 1580 (11th Cir. 1995). "In interpreting an insurance contract, we are bound by the plain meaning of the contract's text." *Bioscience W., Inc. v. Gulfstream Prop. & Cas. Ins. Co.*, 185 So. 3d 638, 640 (Fla. 2d DCA 2016)) (quoting *State Farm Mut. Auto. Ins. Co. v. Menendez*, 70 So. 3d 566, 569 (Fla. 2011)). The scope of insurance coverage is defined by the language and the terms of the insurance policy, and where the language of the policy is plain and unambiguous, the contract must be enforced as written. *See generally Siegle v.*

*Progressive Consumers Ins. Co.*, 819 So. 2d 732, 734–35 (Fla. 2002).  To state a claim for breach of contract, a plaintiff must allege: "(1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (citing *Friedman v. N.Y. Life Ins. Co.*, 985 So. 2d 56, 58 (Fla. 4th DCA 2008)).

Here, Martinez argues that the business income and civil authority provisions of the insurance policy covers his dental practice's loss of business income as a result of the Governor's executive order—a civil authority—to limit dental services to only emergency procedures during the COVID-19 pandemic, and that Allied breached the insurance policy by denying benefits under the above provisions.

Accepting all allegations as true, the dental practice's argument still fails because the loss or damage asserted was not due to a "Covered Cause of Loss."  In fact, the policy expressly excludes insurer liability for loss or damage caused "directly or indirectly" by any virus.  (Doc. 4-1 at 23) (excluding coverage from "[a]ny virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease").  Because Martinez's damages resulted from COVID-19, which is clearly a virus, neither the Governor's executive order narrowing dental services to only emergency procedures nor the disinfection of the dental office of the virus is a "Covered Cause of Loss" under the plain language of the policy's exclusion.  Because, as a matter of law, the plain language of the insurance policy excludes coverage of the dental practice's purported damages, the breach-of-contract claim (Count I) is dismissed.

Count II—Declaratory Judgment

The sole basis on which Count II's declaratory judgment claim is pleaded is Martinez's assertion that judicial interpretation of the insurance policy could result in coverage under the civil authority and business income provisions for the loss underlying his breach-of-contract claim. (Doc. 6 at 10.) Pursuant to 28 U.S.C. § 2201, a district court may "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." But before the court may afford declaratory relief, an actual controversy must exist. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 239–40 (1937). Because the breach-of-contract claim is dismissed, no controversy exists. Accordingly, Count II is dismissed as well.

## CONCLUSION

Because the insurance policy specifically excludes loss caused because of a virus, Martinez fails to state a claim for breach of contract and, in turn, for declaratory judgment. Allied's motion to dismiss, (Doc. 6), is **GRANTED**. Given the deficiencies of this complaint, any amendment would be futile. Accordingly, this action is **DISMISSED WITH PREJUDICE**. The clerk is ordered to **CLOSE** the case.

**ORDERED** in Fort Myers, Florida, on September 2, 2020.

**JOHN L. BADALAMENTI**
**UNITED STATES DISTRICT JUDGE**